IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRYAN QUESENBERRY, <br><br>     Plaintiff, <br><br> v. <br><br> PROMPT COURIER & NOTARY SERVICE, INC.; TEXAS CREDITORS CONNECTION, INC.; TEXAS PRIORITY PROCESS SERVICE, INC.; LINDA WIGGINGTON; and MICHAEL WIGGINGTON, <br><br>     Defendants. | Civil Action No. 3:25-cv-3546-E |

**<ins>UNITED STATES OF AMERICA'S COMPLAINT-IN-INTERVENTION</ins>**

This is an action by the United States of America against Prompt Courier & Notary Service, Inc. ("Prompt Courier"), Texas Creditors Connection, Inc. ("Texas Creditors"), Texas Priority Process Service, Inc. ("Texas Priority"), Linda Wiggington, and Michael Wiggington (collectively, "Defendants") to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33, and to recover money for common law or equitable causes of action for payment by mistake and unjust enrichment based upon Defendants' receipt of Paycheck Protection Program ("PPP") funds to which they were not entitled.

**United States of America's Complaint-in-Intervention - Page 1**

## I.    Jurisdiction and Venue

1.    This Court has subject matter jurisdiction over False Claims Act claims under 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331 & 1345, and supplemental jurisdiction over the common law and equitable causes of action under 28 U.S.C. § 1367(a).

2.    This Court may exercise personal jurisdiction over each of the Defendants pursuant to 31 U.S.C. §§ 3732(a) & (b).  Jurisdiction is proper over each of the Defendants because the acts committed in violation of the False Claims Act occurred in the Northern District of Texas, and because one or more of the Defendants can be found in, resides in and/or transact business in the Northern District of Texas.

3.    Venue is proper in this district under 31 U.S.C. § 3732, 28 U.S.C. §§ 1391(b)–(c), and 28 U.S.C. § 1395, because Defendants reside in and/or transact business in the Northern District of Texas.

## II.    Parties

4.    Plaintiff, United States, guarantees and funds certain loans through the Small Business Administration ("SBA")

5.    Defendant, Prompt Courier, is a Texas corporation with its primary place of business in the Northern District of Texas.

6.    Defendant, Texas Creditors Connection, Inc., is a Texas corporation with its primary place of business in the Northern District of Texas.

7.    Defendant, Texas Priority Process Service, Inc., is a Texas corporation with its primary place of business in the Northern District of Texas.

8.    Defendants, Michael Wiggington and Linda Wiggington, are individuals

with a primary residence in the Northern District of Texas. During the relevant period, Michael Wiggington, along with his spouse, Linda Wiggington, owned and/or operated Defendants Prompt Courier, Inc., Texas Creditors Connection, Inc., and Texas Priority Process Service, Inc. Michael and Linda Wiggington served as the authorized representatives for the PPP loan applications which are the subject of this civil action.

### III.      The Paycheck Protection Program

9.      The Coronavirus Aid, Relief, and Economic Security ("CARES") act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

10.      To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the businesses applying for a PPP loan were required to provide

**United States of America's Complaint-in-Intervention - Page 3**

documentation confirming their payroll expenses.

11.    A PPP loan application was processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies.  While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

12.    PPP loans were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

13.    The application process to obtain a PPP loan required the eligible recipient to make the following good faith certifications and acknowledgements:

a.    That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

b.    That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

c.    That the applicant was in operation on February 15, 2020, had not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

d.    That the funds would be used to retain workers and maintain payroll; or

**United States of America's Complaint-in-Intervention - Page 4**

make payments for mortgage interest, rent, utilities, or other covered costs under the PPP Rules;

e. That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud;

f. That not more than 40 percent of the loan proceeds may be used for non-payroll costs;

g. That documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities would be provided to the lender if required;

h. That the eligible recipient had not received and would not receive another loan under the PPP;

i. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

j. That the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a find of up to $250,000.00; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000.00; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.00; and

k. That the lender would confirm the eligible loan amount using the document submitted by the applicant.

### IV.    The False Claims Act

14.    The FCA provides, in relevant part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United

States sustains, plus a civil penalty per violation.  31 U.S.C. § 3729(a)(1).

15.    FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.  *See* 28 U.S.C. § 2461.  For penalties assed after July 3, 2025, the civil penalty amounts range from a minimum of $14,308.00 to a maximum of $28,619.00.  28 C.F.R. § 85.5.

16.    For purposes of the FCA, the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information—

   (i)    has actual knowledge of the information;

   (ii)    acts in deliberate ignorance of the truth or falsity of the information; or

   (iii)    acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

17.    Under the FCA, the term "claim" includes request to the United States for payment, whether made directly or indirectly to the United States.  *Id*. § 3729(b)(2)(A).

18.    The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment of receipt of money or property.  *Id*. § 3729(b)(4).

## V.    Allegations

19.    It is a violation of the FCA to knowingly obtain an SBA-guaranteed PPP loan which is not issued in compliance with the PPP Rules, as well as to obtain forgiveness of such loan.  Defendants Michael and Linda Wiggington, through

Defendants Prompt Courier, Texas Creditors, and Texas Priority, applied for and received three (3) first draw PPP loans, and one (1) second draw loan, each of which, along with accrued interest were forgiven in full, in violation of the FCA.

20.    On May 18, 2020, Michael and Linda Wiggington, through Texas Priority, obtained a first draw PPP loan in the amount of $106,700.00 ("Texas Priority Loan 1") based on misrepresentations in the loan application submitted to an unnamed financial institution (the "Processing Bank").  In the application, Texas Priority listed 15 employees, an average monthly payroll of $42,719, and an address at 176 Ranchero Dr., Sunnyvale, TX 75182.  In the application, Michael and Linda Wiggington did not identify any affiliated businesses.  Michael and Linda Wiggington, through Texas Priority, subsequently applied for and received forgiveness of the Texas Priority Loan 1 in full, along with accrued interest.

21.    On June 19, 2020, Michael and Linda Wiggington, through Prompt Courier, obtained a first draw PPP loan in the amount of $169,500.00 ("Prompt Courier Loan") based on misrepresentations in the loan application submitted to the Processing Bank.  In the application, Prompt Courier listed five employees, average monthly payroll of $67,832.00 and an address at 176 Ranchero Dr., Sunnyvale, TX 75182.  In the application, Michael and Linda Wiggington did not identify any affiliated businesses. Michael and Linda Wiggington, through Prompt Courier, subsequently applied for and received forgiveness of the Prompt Courier Loan in full, along with accrued interest.

22.    On July 17, 2020, Michael and Linda Wiggington, through Texas Creditors, obtained a first draw PPP loan in the amount of $379,100 ("Texas Creditors Loan") based

on misrepresentations in the loan application submitted to the Processing Bank. In the application, Texas Creditors listed 25 employees and an address at 176 Ranchero Dr., Sunnyvale, TX 75182. In the application, Michael and Linda Wiggington did not identify any affiliated businesses. Michael and Linda Wiggington, through Texas Creditors, subsequently applied for and received forgiveness of the Texas Creditors Loan in full, along with accrued interest.

23.    On February 6, 2022, Michael and Linda Wiggington, through Texas Priority, obtained a second draw PPP loan in the amount of $106,700 ("Texas Priority Loan 2") based on misrepresentations in the loan application submitted to the Processing Bank. In the application, Texas Priority listed 15 employees, an average monthly salary of $42,719.333, and an address at 176 Ranchero Dr., Sunnyvale, TX 75182. Michael and Linda Wiggington, through Texas Priority, subsequently applied for and received forgiveness of the Texas Priority Loan 2 in full, along with accrued interest.

24.    Although the applications for the Texas Priority Loan 1, Prompt Courier Loan, Texas Creditors Loan, and Texas Priority Loan 2 were purportedly submitted on behalf of separate entities, each application listed either Michael Wiggington and/or Linda Wiggington as the owner/authorized representative, and listed the entities' business address at the same location: 176 Ranchero Dr., Sunnyvale, TX 75182.

25.    The Sunnyvale, TX address submitted by Linda and Michael Wiggington in the subject PPP loan applications was false. In August 2023, an investigator with the United States Attorney's Office for the Northern District of Texas contacted a Linda *Ruth* Wiggington who resided at the Sunnyvale, TX address listed in the subject PPP loan

**United States of America's Complaint-in-Intervention - Page 8**

applications.  Ms. Wigginton advised that neither she nor her since deceased husband (Ronald Joseph Wiggington) owned Prompt Courier, Texas Creditors, or Texas Priority or ever applied for any PPP loans.  Ms. Wigginton claimed she had been the victim of identity theft and noted that she had received loan default notices in the name of a Linda *Joyce* Wiggington since 2005.

26.    Defendants Texas Priority, Prompt Courier, and Texas Creditors were ineligible to receive any PPP loan proceeds because they were not in operation on February 10, 2020.  Records from the Texas Secretary of State show that Texas Priority, Prompt Courier, and Texas Creditors were formed shortly before applying for the subject PPP loans and *after* the February 15, 2020, cutoff date:

a.  Prompt Courier filed a Certificate of Formation with the Texas Secretary of State on June 10, 2020 (nine (9) days before the submission of the PPP application for the Prompt Courier Loan), listing Michael and Linda Wiggington as officers—both at 176 Ranchero Dr., Sunnyvale, TX 75182.  A tax forfeiture for the company was filed on June 24, 2022.

b.  Texas Creditors filed a certificate of formation with the Texas Secretary of State on July 9, 2022 (eight (8) days before the submission of the PPP application for the Texas Creditors Loan), listing Michael Wigginton as the Director at 176 Ranchero Drive, Sunnyvale, TX 75182.  A tax forfeiture for the company was filed on June 24, 2022.

c.  Texas Priority filed a certificate of formation with the Texas Secretary of State on May 12, 2022 (five (5) days before the submission of the PPP application for the Texas Priority Loan 1) listing Linda and Michael Wiggington as Directors at 176 Ranchero Drive, Sunnyvale, TX 75182.  A tax forfeiture for the company was filed on February 23, 2024.

27.    Bank records also show that the Defendants were not active businesses on or before the February 10, 2020, cutoff date.  For example, Prompt Courier opened a business checking account at the Processing Bank just days prior to submitting its June

United States of America's Complaint-in-Intervention - Page 9

2020 PPP application.  The account was funded with a June 18, 2020, deposit of $200 followed by the June 25, 2020, deposit of the $169,500 PPP loan proceeds.

28.    In addition to obtaining first draw PPP loans to which they were not eligible, Defendants Prompt Courier, Texas Creditors, and Texas Priority knowingly misused the subject PPP loan funds.  For example, bank records show that Prompt Courier used the PPP funds to issue "payroll" payments to Linda and Michael Wiggington (owners), as well as individuals that appear to be family members (e.g., Hunter Wiggington, Halle Wiggington, and Pebbles Wiggington).  For example, Prompt Courier issued June 2020 "payroll" payments totaling $34,382.56, July 2020 "payroll" payments" totaling $94,565.50, and August 2020 "payroll" payments totaling $19,500.  All of Prompt Courier's purported "payroll" payments using PPP funds were issued to members of the Wiggington family.  None of these purported "payroll" payments were reported by Prompt Courier to the Texas Workforce Commission.[1]

29.    Prompt Courier's purported "payroll" payments to Michael Wiggington and Pebbles Wiggington also exceeded the maximum compensation that businesses could pay to individuals using PPP funds.  Under the PPP Rules in effect at that time, loan recipients could not provide compensation to individuals in an amount that would exceed $100,000 on an annualized basis.  Prompt Courier issued $90,013.64 to Michael Wiggington in June and July of 2020, and issued $29,687.50 to Pebbles Wiggington in July and August of 2020.  Annualized, these payments reflect an annual salary of

---

[1] Texas Workforce Commission Rules 815.07 and 815.09 require all employers to report Unemployment Insurance wages and to pay their quarterly Unemployment Insurance taxes electronically.

**United States of America's Complaint-in-Intervention - Page 10**

$540,081.84 and $178,125, respectively—far in excess of the $100,000 annualized cap under the PPP Rules.

30.     False statements and documents were submitted to the Processing Bank which misrepresented the eligibility of Texas Creditors, Prompt Courier, and Texas Priority to obtain the subject PPP loans.  Additionally, Texas Creditors, Prompt Courier, and Texas Priority did not use the proceeds of the subject loans for authorized purposes. These false statements in the loan applications and forgiveness applications were material to the payment of money by the Processing Bank that was then reimbursed by the SBA, causing damages to the United States.

The United States realleges and incorporates all paragraphs above of this Complaint-in-Intervention as fully set forth herein in all Counts listed below:

**FIRST CAUSE OF ACTION**
False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
Presenting or Causing to False Claims to Be Presented for Payment

31.     Michael and Linda Wiggington, through Texas Creditors, Prompt Courier, and Texas Priority, knowingly requested and obtained four (4) PPP loans they were not entitled to for an amount they were not entitled to, in violation of PPP Rules.

32.     Michael and Linda Wiggington, through Texas Creditors, Prompt Courier, and Texas Priority, knowingly requested forgiveness of the subject PPP loans, despite their failure to comply with PPP Rules.

33.     By virtue of these false claims, the United States was damaged for the full amount of the subject PPP loans and the processing fees paid to the Processing Bank, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil

United States of America's Complaint-in-Intervention - Page 11

penalties for each violation.

## SECOND CAUSE OF ACTION
False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
Making or Using False Records or Statements

34.     Michael and Linda Wiggington, through Texas Creditors, Prompt Courier, and Texas Priority, knowingly submitted four (4) PPP loan applications that contained misrepresentations regarding the active status of the business, the business's address, payroll costs, and intended use of PPP funds.

35.     Michael and Linda Wiggington, through Texas Creditors, Prompt Courier, and Texas Priority, knowingly submitted PPP forgiveness applications that misrepresented their use of the PPP funds and eligibility for loan forgiveness.

36.     By virtue of these false statements, the United States was damaged for the full amount of the subject PPP loans and the processing fees paid to the Processing Bank, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## THIRD CAUSE OF ACTION
Unjust Enrichment

37.     This is a claim for the recovery of monies by which Defendants have been unjustly enriched.

38.     By obtaining from the United States, through the Processing Bank, funds to which Defendants were not entitled, Defendants were unjustly enriched and the United States is entitled to damages in the full amount of the subject PPP loans and the processing fees paid to the Processing Bank, plus any other costs or interest, together

with any other damages to be determined at trial.

## FOURTH CAUSE OF ACTION
Payment by Mistake of Fact

39.     This is a claim for the recovery of monies the United States paid directly or indirectly to Defendants as a result of mistaken understandings of fact.

40.     The United States' mistaken understandings of fact were material to its decision to approve the subject PPP loans provided to Defendants, as well as the forgiveness of the subject PPP loans.

41.     The United States, acting in reasonable reliance on the truthfulness of the statements contained in the subject PPP loan applications, approved four (4) loans to Defendants to which they were not entitled.

42.     The United States, acting in reasonable reliance on the truthfulness of the statements contained in the subject PPP loans forgiveness applications, forgave the subject PPP loans when they were not eligible for forgiveness.

43.     Thus, the United States is entitled to recoup the amount of the subject PPP loans plus any other amounts to be determined at trial.

## Prayer for Relief and Jury Demand

Accordingly, the United States respectfully requests judgment in its favor as follows:

  a. As to the First and Second Causes of Action (False Claims Act) against Defendants for treble the damages it sustained for the subject PPP loans and the processing fees paid by the United States to the Processing Bank, plus

**United States of America's Complaint-in-Intervention - Page 13**

interest applied from the date of the loan disbursement, together with the

maximum civil penalties allowed by law;

b.  As to the Third and Fourth Causes of Action (Unjust Enrichment and

Payment by Mistake) against Defendants for the amounts by which

Defendants were unjustly enriched, the amount United States paid by

mistake, plus interest, costs, and expenses, and for all such further relief as

may be just and proper;

c.  All costs associated with prosecuting this civil action, as provided by law;

d.   Interest on all amounts owed to the United States; and

e.  All other relief the Court deems just and proper, to be determined at trial by

jury.

The United States demands a jury trial on all claims alleged herein.

Respectfully submitted this 27th day of February, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ *Saurabh Sharad*
Saurabh Sharad
Assistant United States Attorney
New York Bar No. 5363825
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8600
Facsimile: 214-659-8807
Email:  saurabh.sharad@usdoj.gov

*Attorneys for the United States of America*